441 So.2d 620 (1983)
CITY OF TALLAHASSEE, Appellant,
v.
FLORIDA PUBLIC SERVICE COMMISSION, Appellee.
No. 62833.
Supreme Court of Florida.
December 1, 1983.
*621 Frederick M. Bryant and Davisson F. Dunlap, Jr. of Pennington, Wilkinson & Dunlap, and Bryan W. Henry of Henry, Buchanan, Mick & English, Tallahassee, for appellant.
William S. Bilenky, General Counsel, Patrick K. Wiggins, Deputy Gen. Counsel and Paul Sexton, Staff Counsel, Fla. Public Service Com'n, Tallahassee, for appellee.
BOYD, Justice.
We have for review a decision of the Public Service Commission ordering the City of Tallahassee to eliminate the fifteen percent surcharge the City imposes upon non-resident utility customers. We have jurisdiction. Art. V, § 3(b)(2), Fla. Const.
This case originated when the Public Service Commission ordered the City of Tallahassee to show cause why the surcharge the City imposed upon non-resident utility customers *622 should not be eliminated. The City filed a petition for writ of prohibition in this Court challenging the Commission's authority to issue such an order. We denied the petition, holding that the City's use of distinct customer classifications based upon residency was a matter of rate structure which the Commission had statutory authority to regulate. City of Tallahassee v. Mann, 411 So.2d 162 (Fla. 1981).
Upon remand, the City filed a Petition to Initiate Rulemaking, which the Commission denied. The City appealed this ruling, which appeal was still pending in this Court at the time the Commission rendered its decision in the instant case. Shortly after the instant appeal was argued, we issued an opinion in the earlier appeal affirming the Commission's denial of the petition to initiate rulemaking. See City of Tallahassee v. Public Service Commission, 433 So.2d 505 (Fla. 1983).
Meanwhile, the City requested a formal hearing pursuant to section 120.57(1), Florida Statutes (1981). Before the hearing began, the City filed a request that the commissioners recuse themselves on the ground that they had financial interests in the outcome of the proceeding. The Commission denied the request.
At the hearing the City attempted to establish a reasonable basis for its surcharge by showing that it costs more to serve customers residing outside the city limits than it did to serve those residing inside. An accountant testified that in figuring the difference in costs of serving different geographic locations, the City focused on the distribution costs since they were more clearly linked with service location than were generation or transmission costs which served the whole system. He also testified that he performed a statistical analysis showing that increases in population caused increased demand resulting in a need for additional distribution facilities. A city engineer testified that higher distribution costs were associated with rural areas because less densely populated areas required more transformers, and that such rural transformers were usually smaller and less efficient than the larger transformers that could be used to serve more densely populated areas. Another accountant testified that his firm calculated the actual costs of distribution equipment and allocated these costs to inside or outside the city limit categories depending upon the location of the equipment. The costs of distribution equipment which could not be specifically identified were allocated to these two categories based on the respective percentages of population growth.
Using the accountants' study, a consulting engineer testified that the differential in distribution costs would justify a 19.39% surcharge. On cross-examination he explained that his calculations were based on comparing the average cost per person of the distribution equipment inside the city limits with the average cost per person of equipment outside the city limits. He conceded that the most recent purchases of distribution equipment reflected a higher cost because of inflation. He did not consider whether the cost of distribution equipment was recovered through the base rates.
An economist testified about the differences among average, incremental, and marginal costs. He explained that the incremental cost method assigns increased costs to those responsible for causing the increase and suggested that the Commission adopt this method. He explained that since serving new customers generally costs more than serving existing customers, allocating costs on a geographic basis is an appropriate means for allocating costs.
Finally, the City attempted to justify the surcharge by showing that the City spends over $2 million annually in providing non-residents other municipal services such as police and fire protection and public works.
The Commission presented evidence questioning the reasonableness of the relationship between distribution costs and the City's boundaries. A rate analyst testified that assuming a correlation between distribution costs and population density, the City's boundaries are not an appropriate factor to consider since the City's population density has become more like that of *623 the contiguous unincorporated areas due to recent annexations. He explained that there were some areas inside the city limits which were less dense than some areas outside the city limits. The assistant director of the Public Service Commission's electric and gas division testified that even though the average costs may be higher outside the city limits, the incremental costs of adding new customers outside the city limits was lower than the incremental costs of adding new customers inside the city limits.
The Commission entered an order that the fifteen percent surcharge should be eliminated. The Commission found that the surcharge was not justified on a cost-of-service basis; that the classification of customers by location within or without the City's territorial limits was unduly discriminatory; and that the provision of other municipal services to non-residents did not justify the surcharge.
In this appeal, the City raises three issues: whether the Commission's actions actually constitute rulemaking; whether there is competent substantial evidence supporting the Commission's findings; and whether the commissioners should have recused themselves. Since we find that the Commission's order did not depart from the essential requirements of law, we affirm.
As for the City's argument that the Commission's actions constitute rulemaking, we have already ruled in the Commission's favor in City of Tallahassee v. Florida Public Service Commission, 433 So.2d 505 (Fla. 1983), where we held that the Commission did not abuse its discretion in declining to initiate rulemaking. We recognized
that the factual situations under which particular surcharge issues arise will be quite diverse, and for this reason, the PSC should not be compelled to promulgate restrictive rules in an area demanding flexibility. The statutes outlining the PSC's jurisdiction and duties are necessarily general in nature, providing for flexibility in the exercise of its power.
To the extent the PSC solidifies its position on policy in a particular area, we believe such established policy should be codified by rule. However, as in the instant case, if the PSC seeks to exercise its authority on a case-by-case basis until it has focused on a common scheme of inquiry derived through experience gained from adversary proceedings, then we hold that there should be erected no impediment to the PSC's election of such course.
Id. at 507. There is nothing in the record to show that the Commission's decision to develop policy on a case-by-case basis in this area of the law was an abuse of discretion. The Commission's finding that the City's boundaries were not a reasonable basis for creating a customer classification was based on evidence unique to the City of Tallahassee and does not constitute an ironclad rule which will automatically apply to all other municipalities.
This brings us to the issue of whether there is sufficient competent evidence to support the Commission's findings. As we stated in City of Tallahassee v. Mann, 411 So.2d 162 (Fla. 1981), the burden was upon the City to show a reasonable basis for classifying customers within or without the city limits. This the City failed to do. There was evidence that the average cost of distribution equipment was associated with the population density but that there was not a high degree of correlation between population density and the City's boundaries. There was also evidence that the City's boundaries were subject to sudden changes through annexations which were also unrelated to the population density of the areas annexed. This evidence supported the Commission's findings that classifying customers on the basis of residency was unduly discriminatory.
Although the Commission did order that the surcharge be eliminated, it suggested a reason not argued by the City which could justify the continuance of the surcharge. In its order the Public Service Commission stated:
The City did not rely upon the existence of its in-city utilities tax as a justification for imposing the surcharge, and no evidence was received in support of that approach. We are therefore unable to *624 consider that justification in rendering our decision here. Nevertheless, should the City, at a later date, file a tariff providing for an out-of-city surcharge equal to the in-city utilities tax rate, we would not consider that as an unjustly discriminatory rate structure as found herein. The Public Service Commission did not regulate municipal electric rate structures at the time that many cities had the option to adopt a utilities tax. A city could establish what appeared to be, as a practical matter, equal charges on utility bills inside and outside the city by adopting a utilities tax within the city and an equal surcharge outside the city. Alternatively, a city could, in fact, establish equal charges on electrical use simply by raising all rates equally inside and outside the city. With no constraint on the choice of options, some cities chose to adopt a utilities tax and an equal surcharge.
Where a municipality charges an out-of-city surcharge equal to its in-city utilities tax, a rate differential still exists. The surcharge is a charge for electric utility service, while the utilities tax is simply a tax. In such a case, a municipality could eliminate the rate differential simply by eliminating the tax and the surcharge and charging equally inside and outside the city. However, certain municipalities, who may have pledged their utility tax revenues to pay bond indebtedness, may not have this option. We find that, as a matter of policy, we should not require cities to go through this exercise, when the net cost to the ratepayer would be the same.
Thus the Commission has stated that it would allow the City of Tallahassee to charge nonresidents a surcharge in an amount equal to what residents have to pay as a utilities tax. We agree that such a surcharge would not be unduly discriminatory.
Finally, we consider the City's argument that the commissioners should have recused themselves. The standard to be used in disqualifying an individual serving as an agency head is the same as the standard used in disqualifying a judge. § 120.71, Fla. Stat. (1981). For an interest in a proceeding to be a legitimate basis for disqualification, that interest must not be remote, uncertain, or speculative. State ex rel. Hart v. Call, 41 Fla. 442, 26 So. 1014 (1899); Peters v. Meeks, 171 So.2d 562 (Fla. 2d DCA 1964). In this case the City claims the commissioners had an interest in the proceeding because of the impact their decision might have on their utility bills. We find this interest to be remote, uncertain and speculative since any decision concerning the surcharge would not guarantee a financial benefit to the commissioners.
Having found no departure from the essential requirements of law, we affirm the order of the Public Service Commission.
It is so ordered.
ALDERMAN, C.J., and ADKINS, OVERTON, EHRLICH and SHAW, JJ., concur.
McDONALD, J., dissents.