# UPJOHN HEALTHCARE SERVICES, INC. v. DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES

Case No. 83-335R

State of Florida, Division of Administrative Hearings

October 25, 1984

## APPEARANCES OF COUNSEL

**James D. Wing** and **Barbara R. Pankau, Carlton, Fields, Ward, Emmanuel, Smith and Cutler,** for petitioner.

**Robert P. Daniti** for respondent.

## OPINION

DIANE D. TREMOR, Hearing Officer.

Pursuant to notice, an administrative hearing was held before Diane D. Tremor, Hearing Officer with the Division of Administrative Hearing, on May 10 and 11, 1984, in Tallahassee, Florida. This case was consolidated for hearing purposes with the cases of *Upjohn Healthcare Services, Inc. v. Department of Health and Rehabilitative Services,*

DOAH Case Number 83-3059, and *Department of Health and Rehabilitative Services v. Upjohn Healthcare Services, Inc.,* DOAH Case Number 83-3248, which are the subject of a separate Recommended Order. The instant proceeding was brought pursuant to Section 120.56, Florida Statutes, and challenges the validity of certain "rules" as embodied in the following documents, copies of which are attached to this order:

(1) An April 7, 1982 memorandum by Gary Clarke, Deputy Assistant Secretary for Health Planning and Development, with attached legal opinion dated March 9, 1982, by James Barclay ("the Clarke memorandum" and "the Barclay opinion"),

(2) The Home Health Planning Review Matrix ("the matrix"),

(3) The April 8, 1983 "OPLC Policy Letter No. 33-83" by Jay Kassack, Director of the Office of Licensure and Certification ("the Kassack policy letter").

## INTRODUCTION

This rule-challenge proceeding was consolidated for hearing purposes with two other cases involving the application of the challenged statements to Upjohn Healthcare Services, Inc. (Upjohn). Case No. 83-3059 challenges the Department of Health and Rehabilitative Services' denial of Upjohn's application to add to its Marion County license to operate a home health care agency the adjoining counties of Sumter, Citrus and Lake. Case No. 83-3248 emanates from an Administrative Complaint seeking revocation of, or other disciplinary action against, Upjohn's Marion County license on the ground that Upjohn is providing home health services in Citrus and/or Lake Counties without a license.

In support of its position in each of the three cases, Upjohn offered the testimony of Dr. Frank A. Sloan, accepted as an expert in the field of economics as applied to home health care agencies; Wilford "Bill" Madsen, a Regional Manager for Upjohn; and R. Warren Dacus, accepted as an expert in the area of health planning. The depositions of Ray Chambis, Gary Clarke, Thomas F. Porter, Nat Ward and Marjorie Turnbull, taken in connection with another proceeding, were received into evidence, as were the depositions of Ms. Turnbull and Jay Kassack taken for the purposes of these proceedings. Upjohn's Exhibits 1 through 53, 55, 57, 58, 64 through 73 and 85 through 88 were received into evidence.

Testifying on behalf of HRS were Eugene Nelson, the Administrator of HRS's Office of Community Medical Facilities, who was accepted as

an expert in health planning; Carol Gormley, the Executive Director of the North Central Florida Health Planning Council; and John Adams, a License Supervisor with HRS's Office of Licensure and Certification. Testifying by way of deposition were Phyllis Jean Beiro and Kathleen J. Maher. The deposition of Thomas J. Konrad, taken in another proceeding, was also received into evidence, as were HRS's Exhibits 1 through 11.

Subsequent to the hearing, the parties submitted proposed findings of fact and proposed conclusions of law. To the extent that the parties' proposed findings are not contained herein, they are rejected as being either not supported by competent substantial evidence, irrelevant or immaterial to the issues in dispute or as constituting legal conclusions as opposed to factual findings.

## FINDINGS OF FACT

Upon consideration of the oral and documentary evidence adduced at the hearing, as well as the parties' stipulated facts, the following facts relevant to this rule-challenge proceeding are found:

(1) Upjohn operates a number of home health agencies throughout the State of Florida, as well as in other states.

(2) Prior to 1975, a patient served by a proprietary home health agency could not obtain reimbursement under the Medicare program. Such agencies were not able to obtain a Medicare "provider number" unless they were licensed under State law. In 1975, the Legislature enacted the Home Health Services Act, Chapter 400, Part III, Florida Statutes, providing for the licensure of proprietary home health agencies. On July 1, 1977, the "establishment of a new home health agency" became one of the projects subject to Certificate of Need review. HRS's rules pertaining to Certificate of Need review were amended in October of 1977, to include the "establishment of a new home health agency or a new subunit of an agency" as projects subject to review. During the rule adoption process, HRS specifically considered the suggestion that expansions of service areas by existing home health agencies without new facilities be subject to Certificate of Need review. This suggestion was rejected on the belief that such a requirement was not statutorily authorized.

(3) Prior to 1982, officials within the Office of Community Medical Facilities (OCMF), the office responsible for the Certificate of Need program, generally took the position that the mere geographical expansion of services by an existing certificated and licensed home health agency did not require further Certificate of Need review as long

198

as additional physical facilities were not contemplated. The Office of Licensure and Certification (OLC) did, on occasion, require home health agencies to build new offices if it was found that an agency was geographically overextending itself in terms of appropriate supervision or quality of care concerns. In January of 1980, the Director of OLC took the position that petitioner's licensed Marion County home health agency could not provide services to Citrus County residents without applying for and obtaining a Certificate of Need, and thereafter having its license extended to operate in Citrus County.

(4) In September of 1981, Upjohn was informed by the OCMF that a Certificate of Need was not required for the provision of home health services from its Jacksonville, Duval County, office to patients residing in Nassau, Baker or St. Johns Counties, as long as subunits or other physical facilities were not opened in those counties. The above four counties were all located within the same health service area.

(5) Thereafter, in October of 1981, Upjohn requested advice from the OLC as to whether it could provide services from its Broward County office to patients in Palm Beach County. Noting that it was the understanding of the OLC that a Certificate of Need would be required to authorize any expansion of home health services, the OLC referred Upjohn's request to the OCMF. The matter was thereafter referred to the HRS legal staff. James M. Barclay, an attorney with the Office of Health Planning and Development, issued Legal Opinion 82-2 on the issue of whether a Certificate of Need was required before a home health agency, licensed to operate in certain counties within a health service area, could provide services to additional counties within the same health service area. It was Mr. Barclay's opinion that a licensed home health agency could provide services to additional counties within the same health service area without an additional Certificate of Need. (See Attachment A) Based on this opinion, the OLC informed Upjohn that it could not expand its Broward County services to Palm Beach County without Certificate of Need review since the two counties were located in separate health service areas.

(6) The Deputy Assistant Secretary for Health Planning and Development, Gary J. Clarke, disseminated the Barclay opinion to the directors of the Health System Agencies. In his cover letter, dated April 7, 1982, Mr. Clarke noted that "the memorandum clarifies existing law; namely, that a home health agency in one county may offer services in an adjoining county without obtaining a CON." It is further noted that

". . . this office and perhaps many HSAs have proceeded under the

199

mistaken assumption that a CON was required in every case where an existing home health agency desired to provide services in a county it was not previously providing services in.

. . . It appears that the legal result of this question is due to inartful drafting in both the statutes and the rules. Nonetheless, this opinion —while neither preferable nor what we had assumed to be correct— appears to accurately state the application law." . . . (See Attachment B)

Based upon the Barclay opinion and the Clarke cover letter, Upjohn informed its various Florida office managers that its existing home health agencies, though licensed only for a particular county, could deliver services in additional counties within the home health service area without the need for further Certificate of Need review.

(7) Subsequent to the Barclay opinion and the Clarke distribution letter, there were changes in the Certificate of Need law, as well as leadership changes within HRS. The former Health Systems Agencies were abolished and replaced with District Councils, local involvement with the Certificate of Need process was virtually eliminated and the "health service areas" were changed to "districts", some with different boundaries. These changes prompted the Director of the OLC, Jay Kassack, to request of the new Deputy Assistant Secretary a clarification of the policy regarding Certificate of Need review for expansion of home health agency service areas.

(8) In order to be consistent with regard to home health agencies and to make clearer to HRS officials, applicants and the public how HRS would be applying the statutes and rules, HRS developed a "home health agency review matrix." (See Attachment C). Basically, the review matrix limited geographical expansion of services (without Certificate of Need review) to those counties in which the applicant could demonstrate that the criteria for review had been applied by the appropriate reviewing bodies, either the OCMF or the former local Health Systems Agencies. The matrix was developed in February or March of 1983, and was distributed internally with HRS.

(9) Upjohn had several license applications for geographical expansion of services in early 1983. While advised in late March that a "revised ruling" was going into effect, Upjohn had no knowledge of the development of the review matrix. By letter dated April 8, 1983, Upjohn was advised that its license application to expand services from its Pinellas County office to the Counties of Hillsborough, Manatee and Pasco was denied for failure to obtain a Certificate of Need or exemption from review.

**200**

(10) By "OPLC Policy Letter No. 33-83" dated April 8, 1983, addressed to "All Home Health Agencies" and "Home Health Agency Association", the Director of the OLC, Jay Kassack, gave notice of the OLC position with regard to expansion of services in counties other than those noted on a home health agency license. The addressees were advised that "it is illegal to provide services in any area not covered under your current license." (See Attachment D). This policy letter was written in direct response to the review matrix.

(11) It was not until May, 1983, that Upjohn became aware of the existence of the review matrix. By letter dated May 5, 1983, the Medical Facilities Consultant Supervisor, Nathaniel Ward, advised counsel for Upjohn that, "we have a matrix which we must apply (Exhibit 1) when determining whether a Certificate of Need is required for expansion into the service area."

(12) In reliance upon the Barclay opinion and the Clarke memorandum, Upjohn extended the provision of home health services from its Marion County office into Citrus, Lake and Sumter Counties from and after August, 1982. Prior to August 1, 1983, Upjohn requested the OLC to add to its Marion County home health agency license the Counties of Citrus, Lake and Sumter. This request was denied by the OLC on the ground that Upjohn had failed to obtain a Certificate of Need or exemptionn from review for those counties.

(13) On August 30, 1983, HRS issued an Administrative Complaint seeking to revoke Upjohn's Marion County license, or impose other penalties, on the ground that the Marion County home health agency had been providing home health services in Citrus and/or Lake Counties without a license that lists those counties on its face.

## CONCLUSIONS OF LAW

Pursuant to Section 120.56, Florida Statutes, Upjohn challenges, on both procedural and substantive grounds, the statements contained in the Barclay opinion accompanied by the Clarke memorandum, the matrix and the Kassack policy letter. It is urged that the statements contained in these documents are "rules" within the meaning of Section 120.52(15) Florida Statutes, and are invalid because they were not promulgated in accordance with the Administrative Procedures Act. It is further urged they are invalid because their substance goes beyond the authority delegated to HRS by the Legislature.

HRS takes the position that the statements contained in the challenged documents are excluded from the meaning of a "rule" because they constitute either agency legal opinions or internal management

memoranda within the meaning of Section 120.52(15)(a) and (b), Florida Statutes. It is urged that the challenged statements do not need to be promulgated as rules because they constitute emerging department policy with regard to statutory interpretation and involve the exercise of discretion by agency officials.

There can be no doubt that Upjohn has been and is now substantially affected by the statements contained in the challenged documents. It relied upon the Barclay opinion, as disseminated by the Clarke memorandum, in advising its agencies that they could lawfully extend home health care services to counties within the same health service area without additional Certificate of Need review. The matrix has formed and continues to form the basis for HRS determinations with regard to both license applications and Certificate of Need review. The statements contained in the Kassack policy letter have formed the basis for an Administrative Complaint in which HRS is seeking to revoke or take other disciplinary action against Upjohn's Marion County license for providing services in adjoining counties, for which it holds no Certificate of Need or license. Upjohn thus has standing to challenge the validity of the statements contained in these documents.

Before evaluating the various documents and determining whether the statements contained therein constitute invalid "rules", it is necessary to digress momentarily to discuss the effect of such determinations upon Upjohn and other similarly affected "persons." This brief discussion receives further amplification in the consolidated Upjohn cases involving the license denial and the Administrative Complaint (DOAH Case Numbers 83-3059 and 83-3248).

An agency may act and expound upon the statutes it is charged with implementing by rule or by order. Stated differently, policy may be developed through rulemaking, through adjudication or through both. The benefit of acting pursuant to a properly promulgated rule is to clothe the action (as well as the stated policy embodied in the rule) with a presumption of correctness upon which the agency need not further explicate and defend. The cost to the agency of policymaking by adjudication is that it must repeatedly, on a case-by-case basis, fully present evidence as to the accuracy of each factual premises and the rationality of every policy choice, and have this evidence subjected to countervailing evidence and argument. *McDonald v. Department of Banking and Finance*, 346 So.2d 569 (Fla 1st DCA 1977); *Florida Cities Water Company v. Florida Public Service Commission*, 384 So.2d 1280 (Fla. 1980); *Anheuser-Busch, Inc. v. Department of Business Regulation*, 393 So.2d 1177 (Fla. 1st DCA 1981); *Barker v. Board of Medical Examiners*, 428 So.2d 720 (Fla. 1st DCA 1983); *City of*

202

*Tallahassee v. Florida Public Service Commission*, 433 So.2d 505 (Fla. 1983); *Florida Public Service Commission v. Indiantown Telephone Systems, Inc.*, 435 So.2d 892 (Fla. 1st DCA 1983); and *City of Delray Beach v. Department of Transportation and Palm Beach County*, 9FLW 1961, September 17, 1984 (Fla. 1st DCA 1984). Thus, it would appear that the real effect of a determination rendered as a result of a rule-challenge proceeding, at least when it is based upon procedural grounds, is to dictate the amount and the sufficiency of evidence which an agency must present and establish to justify its policy choices and actions in individual cases. A declaration that a "rule" is "invalid" on procedural grounds (i.e., that a statement is a "rule" and was not properly promulgated), does not, in and of itself, automatically invalidate the action taken by the agency.

A "rule" is an "agency statement of general applicability that implements, interprets, or prescribes law or policy or describes the organization, procedure, or practice requirements of an agency. . ." Section 120.52(15), Florida Statutes. It is a statement which serves, in and of itself, to create rights, to require compliance or to otherwise have the direct and consistent effect of law. *State, Department of Administration v. Harvey*, 356 So.2d 323 (Fla. 1st DCA 1978). Rules are prospective in nature and are intended to have future application. The policy expressed in a rule is not dependent upon the discrete facts at hand. *Anheuser-Busch, Inc. v. Department of Business Regulation*, supra. The term "rule" does not include "internal management memoranda" or "legal memoranda or opinions" as defined in Section 120.52(15)(a) and (b), Florida Statutes. A "rule" does not include statements which have only temporal and limited geographic effect, *State, Department of Commerce v. Matthews Corporation*, 358 So.2d 256 (Fla. 1st DCA 1978), though it may include statements which have industry-wide application for only a finite duration. *Balsam, et al. v. Department of Health and Rehabilitative Services*, 452 So.2d 976 (Fla. 1st DCA 1984).

Before applying these principals to the statements embodied in the challenged documents, it is first necessary to examine the statutory basis or reasons for those pronouncements. Section 381.494(1)(f), Florida Statutes, requires a Certificate of Need for "the establishment of a new home health agency." The Home Health Services Act requires any agency providing home health services to obtain a license and prohibits the issuance of a license to those home health agencies which have not received a Certificate of Need. Sections 400.467 and 400.471, Florida Statutes. Thus, the Legislature has clearly mandated that a new home health agency needs both a Certificate of Need and a license, and

that a license cannot be obtained without a Certificate of Need. What is not clear from a review of the statutory language is whether or not an existing certificated and licensed home health agency, without adding new physical facilities, may geographically extend the services it provides in the absence of an additional Certificate of Need and/or an additional or amended license.

There can be no doubt that the statements contained in the challenged documents constitute attempts by HRS to provide an answer to that question. The answer to that question constitutes an interpretation of the statutes, as well as a description and prescription of the policy and practice requirements of HRS. The determining factor then becomes whether or not the statements were embodied in "internal management memoranda" or "legal memoranda or opinions," as statutorily defined, or, stated differently, whether the statements were intended to be of general applicability and have the consistent effect of law.

An "internal management memoranda" has no application outside the agency issuing it and does not affect either the private interests of any person or any plan or procedure important to the public. Section 120.52(15)(a), Florida Statutes. Agency legal opinions are exempt from the definition of a "rule" prior to their use in connection with an agency action. Section 120.51(15)(b), Florida Statutes.

The Barclay opinion, by itself, constitutes an agency legal opinion within the meaning of Section 120.52(15)(b), and is thus exempt from the rule-making requirements of Chapter 120, Florida Statutes. That document was prompted as a result of questions from two health care providers, and contains the opinion of an agency attorney as to the correct interpretation of the law to a specific factual situation. It was not disseminated by Attorney Barclay to anyone other than Deputy Assistant Secretary Clarke and did not, in and of itself, purport to require compliance or to otherwise have the direct and consistent effect of law.

It was only when the Barclay opinion was summarized and disseminated to all Health Systems Agency Directors by Deputy Assistant Secretary Clarke that the statements contained therein took on the character of a "rule." It was then that the agency elected to set forth, in written form, its policy and statutory interpretation of the law with respect to the geographical expansion of home health services. By its own terms, the statements were intended to "clarify existing law." The statements were applicable industry-wide and were intended to describe and prescribe agency practice. The Clarke document has as its subject

204

"CON Requirements for Home Health Agencies," and was intended to be instructive and binding upon both home health care providers and those responsible for Certificate of Need review. Unlike an "internal management memorandum," the packet (the Barclay opinion accompanied by the Clarke memorandum) had application outside the agency and directly affected the rights and private interests of the home health care industry. As such, the statement that a home health agency is one county may offer services to additional counties within the same health service area without further Certificate of Need review constitutes a "rule" within the meaning of Section 120.52(15), Florida Statutes.

The "Home Health Agency Review Matrix" likewise constitutes a "rule". The matrix was developed and it utilized to consistently interpret and implement the Certificate of Need requirements for home health agencies. It constitutes a change in prior agency policy and practice and applies to the home health care industry as a whole. It is utilized to determine when Certificate of Need review is required, and thus directly affects private interests and has the consistent effect of law. The rule-making process is particularly desirable when prior agency practice or statutory interpretation has changed. *State, Department of Insurance v. Insurance Services Office, et al.*, 434 So.2d 908 (Fla. 1st DCA 1983). The matrix changed the policy from one of no Certificate of Need requirement for expansion of services to counties within the same health service area to one of allowing expansion without a Certificate of Need only in those instances where the need criteria had previously been applied to the new proposed service area during the original Certificate of Need review process. As such, the matrix constitutes a "rule" within the meaning of Section 120.52(15), Florida Statutes.

The Kassack letter advises all home health agencies and the Home Health Agency Association that it is illegal to provide services in any area not covered under a current license. This constitutes a statement of general applicability and an interpretation of the licensing law as applied to home health agencies pursuant to Chapter 400, Part III, Florida Statutes. It is a statement describing what the agency licensing policy is with respect to the expansion of services. It is definitely not an "internal management memorandum" nor is it an "agency legal opinion". It is intended to directly affect the private interests of home health care providers and put them on notice that certain activity constitutes illegal conduct. It does not merely restate the statutory licensure requirements. Chapter 400, Part III, only requires a license for an agency providing home health services. The Kassack letter expounds upon this to require additional licensure for each expanded

205

area of service. The statements contained in the Kassack policy letter clearly constitutes a "rule" within the meaning of Section 120.52(15), Florida Statutes.

Agencies are required to follow certain rulemaking procedures before adopting statements of general applicability which implement, interpret or prescribe law or policy or describe the procedure and practice requirements of the agency. These procedures include notice of intended action, the preparation of an economic impact statement and the provision of an opportunity for affected persons to present evidence and argument on all issues under consideration. Section 120.54, Florida Statutes. HRS did not follow these rulemaking requirements of the Administrative Procedure Act before adoption of the three "rules" which are the subject of this proceeding. For that reason, the Barclay-Clarke documents, the review matrix and the Kassack policy letter constitute invalid exercises of delegated legislative authority. Having so concluded, it is unnecessary to rule upon the statutory authority for the substantive content of the challenged rules. Whether or not the actions taken by HRS under the guise of the invalid rules otherwise find authority in the statutes is the subject of the two Upjohn cases referred to earlier in this Order.

## FINAL ORDER

Based upon the findings of fact and conclusions of law recited herein, it is ORDERED THAT

(1) The Barclay opinion, accompanied by the Clarke memorandum,

(2) The Home Health Agency Review Matrix, and

(3) The Kassack policy letter

all constitute "rules" and are invalid exercises of delegated legislative authority because they were not properly promulgated in accordance with the Administrative Procedure Act.

# APPENDIX

STATE OF FLORIDA

DEPARTMENT OF
## Health & Rehabilitative Services

Bob Graham, Governor

1317 WINEWOOD BOULEVARD TALLAHASSEE, FLORIDA 32301

PDDHD March 9, 1982

SUBJECT: Legal Opinion 82-2

TO: PDDHD (Gary Clarke)

A legal opinion has been requested on a question which is
substantially as follows:

> IS A CERTIFICATE OF NEED REQUIRED BEFORE
> A FLORIDA HOME HEALTH AGENCY, LICENSED
> TO OPERATE IN CERTAIN COUNTIES WITHIN
> A HEALTH SERVICE AREA, MAY PROVIDE HOME
> HEALTH SERVICES TO ADDITIONAL COUNTIES
> WITHIN THE SAME HEALTH SERVICE AREA?

## SUMMARY

A Certificate of Need is not required before a Florida Home Health
Agency, already licensed to operate within certain counties in a
health service area, may provide home health agency services to
additional counties with the same health service area.

## DISCUSSION

I acknowledge receipt of correspondence prompting the above
question from Upjohn Health Care Services dated October 29, 1981;
and from Total Professional Health Care, Inc., dated December 9, 1981.
Because each letter requested an opinion concerning the requirements
of obtaining a Certificate of Need before providing home health
agency services in additional counties within the same health service
area, the single response has been prepared to deal with that question
Pursuant to Subsection (7)(a) of Section 381.493, F.S., and Rule 10-5
(1), F.A.C., the Department is authorized to respond to such requests
as they may be deemed requests for exemptions. My research reveals
no reported cases dispositive of the issue but GCO 77-42 deals with
this question from a licensure standpoint. The resolution of this
question depends, in part, on the relevant Certificate of Need (CON)
requirements applicable to home health agencies found in the CON
statutes (Sections 381.493 through 381.499, 1981 Supp.) and rules
(Chapter 10-5, F.A.C.).

The establishment of a new home health agency (one that is of
recent or fresh origin or previously unknown) is subject to CON requi
ments by subsection (1)(f) of Section 381.494, F.S., and subsection (
of Rule 10-5.04, F.A.C. In the process of obtaining a Certificate

ATTACHMENT A

**207**

of Need, a proposed home health agency (unless exempted) must meet the criteria set forth in subsection (14)(a) of Rule 10-5.11, F.A.C., where the need for the proposed agency is tested against the census of each of the existing agencies or subunits providing services "within the health service area" (emphasis supplied), which is a technical term itself defined in subsection (24) of Rule 10-5.02, F.A.C., as "that specific geographic region (single or multiple counties) within the State'for which a Health Systems Agency is designated pursuant to (federal law)."

The requirement that the need for a new home health agency be determined in context of an entire health service area is carried forward by rules pertaining to the licensing of home health agencies where a statement attesting to need from the areawide health planning council is required by subsection (1) of Rule 10D-68.04, F.A.C., before a license may be issued. Subsection (7) of Rule 10D-68.04, F.A.C., does require, however, that separate licensure applications and fees for operation of an agency whenever an agency's subunits are operated outside the county of the parent agency or operate as autonomous subdivisions.

The Certificate of Need requirements, as noted above, do not, however, focus on county-by-county need but are determined as they exist within an entire health service area. Accordingly, upon the granting of a Certificate of Need, a home health agency license could be obtained, assuming all other conditions were met, by the holder of that certificate for as many or as few counties in the health service area as the applicant then or later elected to serve. GCO 77-42, mentioned above, does not deal specifically with this question but it does, by implication, confirm the foregoing analysis. The General Counsel's opinion in that case was that the area of operation would be the area covered by the HSA in which the home health agency is located. A copy of that opinion is attached.

The service of additional counties in a health service area would not be an "expanded" service within the health service area because the Certificate of Need is evidence of a need within the entire health service area. Further, service of additional counties in a health service area would not be a "substantial change" in service, as contemplated by subsection (19) of Rule 10-5.02, F.A.C., because that rule does not, by its own terms, apply to providers of health care services.

208

■■■■■■■■■■■■■■■■■■■■■■

Legal Opinion 82-2
 arch 9, 1982
Page Three

 The foregoing may illuminate an otherwise little-known gap
in the regulation of home health agencies in Florida. Until
legislatively or judicially changed, however, it is my opinion,
and you are so advised, that a Certificate of Need is not required
before a home health agency, already licensed to operate within a
health service area, may provide home health agency services to
additional counties within that same health service area.

 JAMES M. BARCLAY
 Attorney
 Office of Health Planning
 & Development

JMB/cca

OF FLORIDA

DEPARTMENT OF

Bob Graham Governor

# Health & Rehabilitative Services

1317 WINEWOOD BOULEVARD TALLAHASSEE, FLORIDA 32301

PDDHD April 7, 1982

SUBJECT: CON Requirements for Home Health Agencies

TO: HSA Directors

Attached is correspondence to the Office of Licensure and Certification, as well as a legal memorandum from Mr. James M. Barclay of our office. The memorandum concerns CON requirements for home health agencies already existing in one county who wish to provide services in an additional county. The memorandum clarifies existing law; namely, that a home health agency in one county may offer services in an adjoining county without obtaining a CON.

This memorandum makes explicit certain issues previously decided by this Department in 1977 (see General Counsel's Opinion 77-42). Nonetheless, this office and perhaps many HSAs have proceeded under the mistaken assumption that a CON was required in every case where an existing home health agency desired to provide services in a county it was not previously providing services in.

It should be noted that this opinion applies only to the provision of services across county boundaries. It does not apply to the establishment of subunits, capital expenditures, or provision of services across HSA boundaries.

It appears that the legal result of this question is due to inartful drafting in both the statutes and the rules. Nonetheless, this opinion—while neither preferable nor what we had assumed to be correct—appears to accurately state the applicable law.

I wanted to advise you of this legal opinion as soon as possible. Given the many questions addressed to our Office of Licensure and Certification, it seems apparent that many home health agency providers will soon have access to this Opinion and will be questioning you about it. If you have any further questions or need a further explanation, please don't hesitate to call.

Sincerely,

Gary J. Clarke.
Deputy Assistant Secretary for
Health Planning & Development

APR 13 1982 ATTACHMENT B

210

| | Establish HHA | Expand Service Area | Establish Subunit(s) |
|---|---|---|---|
| HSA Statement of Need 1975-July 1977 | May establish a HHA in a county in which criteria of need were applied by HSA. (Need records of HSA to document what service area was used). | HSA statement of need remains valid. May expand HHA only in those counties in which criteria of need were applied by HSA. | No CON is required to establish subunits for counties where the HHA had applied criteria of need. HRS will accept the principles of recommended order #88-288. |
| "Grandfathered" | If HHA was operating and had a Medicare provider number from HEW prior to April 30, 1976, the HHA can provide services only in those counties listed in its approved designation agreement document. | If an HHA had a provider number and operated in an HSA prior to April 30, 1976, but stopped providing HHA services in one or more of the counties, HRS will allow the HHA to provide or reinstitute services only in those counties for which it had a provider number and in which it operated prior to April 30,1976. | Same as establishment of HHA. HHA may establish a subunit only in those counties covered by a provider number and operation prior to April 30, 1976. |
| CON | If HHA has CON from HRS, then HHA is eligible to provide services only in those counties for which the review criteria were applied. | If a HHA receives a CON to provide services in an HSA, but only provides services or is licensed in one county; it has never stopped providing services within the HSA. Its CON is therefore valid; d and no additional CON review is required for expansion within that same HSA, according to the review criteria applied. | New subunits require a CON. This includes the establishment of additional subunits in same county as the applicant's existing subunits. |

ATTACHMENT C

211

**STATE OF FLORIDA**

DEPARTMENT OF Bob Graham, Governor

# Health & Rehabilitative Services

P.O. BOX 210 JACKSONVILLE, FLORIDA 32231

OPLC Policy Letter No. 33-83 April 8, 1983

SUBJECT: Expansion of Services

TO: All Home Health Agencies
 Home Health Agency Association

The purpose of this letter is to clarify the position of the Office
of Licensure and Certification as it applies to expansion of
services by home health agencies in counties other than those noted
on their license.

If it is the desire of a home health agency to expand beyond the
counties noted on your license, you must apply to the Office of
Licensure and Certification for this expansion. Upon receipt of
the request, your request will be forwarded to the Office of
Community Medical Facilities to determine if there is any Certifi-
cate of Need implication. Upon receipt of a determination from
that office, this office will then act on your application, either
favorably or negatively, dependent upon outcome.

Please be advised that it is illegal for your home health agency
to provide services in any area not covered under your current
license. Should you have any questions regarding any of the above,
please do not hesitate to contact this office upon receipt.

 Jay Kassack
 Director
 Office of Licensure & Certification

Copy to: Marjorie Turnbull
 Howard Chastain
 Robert Maryanski
 John Adams
 Area Supervisors

 ATTACHMENT D