433 So.2d 505 (1983)
CITY OF TALLAHASSEE, Appellant,
v.
FLORIDA PUBLIC SERVICE COMMISSION, Appellee.
No. 62045.
Supreme Court of Florida.
May 12, 1983.
Rehearing Denied July 11, 1983.
*506 Frederick M. Bryant and Davisson F. Dunlap, Jr. of Pennington, Wilkinson, Gary & Dunlap, and Bryan W. Henry of Henry, Buchanan, Mick & English, Tallahassee, for appellant.
William S. Bilenky, General Counsel and Paul Sexton, Staff Counsel, Florida Public Service Com'n, Tallahassee, for appellee.
ADKINS, Judge.
This case involves an appeal from an order of the Florida Public Service Commission relating to rates of utilities providing electric service. We have jurisdiction. Art. V, § 3(b)(2), Fla. Const.
The City of Tallahassee (hereafter City), pursuant to the request of the Florida Public Service Commission (hereafter PSC), filed its proposed revised tariff sheets, which reflected a continuation of a fifteen percent surcharge imposed on all electric utility customers residing outside the municipal corporate limits.
After the proposed tariffs were submitted, the PSC issued a comment letter to the City requesting it provide justification for the surcharge. The PSC found the City's reply inadequate, and on September 3, 1980, issued an order to show cause why the surcharge should not be reduced or eliminated.
The City, on October 1, 1980, by writ of prohibition appealed the jurisdiction of the PSC to control surcharges. This Court held:
[that] differential charges to customers within and without its corporate limits constitute[s] a classification system and thus [is] a matter of "rate structure" subject to the jurisdiction of the [PSC].
City of Tallahassee v. Mann, 411 So.2d 162, 163-64 (Fla. 1981).
The PSC, on April 29, 1982, denied the City's petition to initiate rulemaking pursuant to section 120.54(5), Florida Statutes (1981), and upon receiving the City's notice of administrative appeal on April 30, 1982, the First District Court of Appeal, on May 6, 1982, transferred the cause on its own motion to this Court pursuant to article V, section 3(b)(2), Florida Constitution, and Rule 9.030(a)(1)(B)(ii), Florida Rules of Appellate Procedure.
The City, in arguing for initiation of rulemaking, contends that it cannot possibly justify its surcharge without the PSC first promulgating rules citing specific standards under which the validity of surcharges will be tested.
The PSC counters by asserting that many variables could be used to support a rate structure differential, and that broad differences exist from one municipality to another. The PSC therefore argues that it has chosen not to restrict the cities in their attempts at justification, but rather has only suggested possible methods of justification, leaving the final decision with each city regarding the factors unique to it which would justify the surcharge it supports. Thus, by only suggesting that various factors be considered rather than mandating by formal rule that specific items be addressed, the PSC argues that it is providing the City greater latitude by which it may justify its surcharge.
What the PSC has elected to do in this case is to see how these proposed factors *507 and what other factors may effect each city, and if a "trend" begins to develop initiate formal rulemaking at that time.
We feel that the PSC in this case gave to the City the greatest latitude for justifying its surcharge. Rather than setting out strict standards by which to justify the surcharge, the PSC relied on the mandates of section 366.06(1), Florida Statutes (1981), as well as proposed factors suggested in show cause order No. 9516. Section 366.06(1) provides that when the PSC scrutinizes a rate structure and finds it discriminatory it has the authority to fix the rate structure at a reasonable level. The statute further mandates that, in fixing such "fair, just and reasonable rates" for a customer class, the PSC:
shall to the extent possible, consider the cost of providing service to the class, as well as the rate history, value of service, and experience of the utility; consumption and local characteristics of various classes of customers; and public acceptance of rate structures.
To these factors could be added those found in the show cause order which would not only be different for each city, but also could have differing consequences upon the levels of rates within a class of customers. The ten factors set out were:
1. The number of customers by rate classification inside and the number of customers by rate classification outside the City limits.
2. The square miles of service area inside and the square miles of service area outside the City limits.
3. A detailed map of the service area indicating the City limits and the service area limits.
4. The distribution transformer KVA serving inside the City limits and serving outside the City limits.
5. The number of distribution transformers serving inside the City limits and serving outside the City limits.
6. The number of customers per distribution line mile inside the City limits and the number of customers per distribution line mile outside the City limits.
7. The distribution linelosses inside the City limits and distribution linelosses outside the City limits.
8. The customer cost inside the City limits and the customer cost outside the City limits.
9. The operation and maintenance cost inside the City limits and the operation and maintenance cost outside the City limits.
10. The meter reading cost inside the City limits and the meter reading cost outside the City limits.
These factors, together with the factors which section 366.06(1) mandates the PSC must consider when it seeks to rectify what it sees as an unjust rate structure, gives the City and any other municipality a good idea as to what concerns should be addressed at the administrative hearing on the surcharge.
We would further recognize that the factual situations under which particular surcharge issues arise will be quite diverse, and for this reason, the PSC should not be compelled to promulgate restrictive rules in an area demanding flexibility. The statutes outlining the PSC's jurisdiction and duties are necessarily general in nature, providing for flexibility in the exercise of its power.
To the extent the PSC solidifies its position on policy in a particular area, we believe such established policy should be codified by rule. However, as in the instant case, if the PSC seeks to exercise its authority on a case-by-case basis until it has focused on a common scheme of inquiry derived through experience gained from adversary proceedings, then we hold that there should be erected no impediment to the PSC's election of such course. We feel that the ad hoc pronouncements either through orders of the PSC or through decisions made after adversary proceedings should be viewed as de facto rules, or as expressed in McDonald v. Department of Banking and Finance, 346 So.2d 569 (Fla. 1st DCA 1977), "incipient policy."
Currently, by its own actions and admissions, the PSC has shown that in the surcharge *508 area, it is in a formulative stage regarding policy. As such, no greater restraints should be imposed on the exercise of the PSC's authority other than those already found in section 366.06(1) as well as those factors it has, and subsequently will, expressly raise either in its orders or through adversary proceedings in this Court. These requirements provide a municipality in general, and the City of Tallahassee in particular, with ample alternatives for justifying their respective surcharges.
We have held in the past and continue to hold in this case, that administrative agencies may develop policies by adjudication and that formal rulemaking is not initially necessary in all cases. Florida Cities Water Co. v. Florida Public Service Commission, 384 So.2d 1280 (Fla. 1980); Citizens v. Mayo, 357 So.2d 731 (Fla. 1978); Anheuser-Busch, Inc. v. Department of Business Regulation, 393 So.2d 1177 (Fla. 1st DCA 1981); McDonald v. Department of Banking and Finance. We have also suggested that rulemaking is preferable if the impact of the rule would be industry-wide. City of Plant City v. Mayo, 337 So.2d 966 (Fla. 1976).
The City asserts that the ad hoc policy decision will necessarily have industry-wide impact. We cannot agree. In the case of other municipalities operating with surcharges there may exist ample justification to support such charges in those cases.
In conclusion we find that the PSC did not abuse its discretion or authority when it declined to initiate rulemaking pursuant to the City's petition. We further find that section 366.06(1), in conjunction with the other factors referred to in this opinion, provide adequate general standards under which the City surcharge may be tested.
The PSC should attempt to initiate codification of its incipient policy regarding the applicable standards to be applied in surcharge cases to the extent practicable in an effort to further delineate areas of inquiry in surcharge cases. However, we reiterate that although codification is ultimately desirable, this Court will not compel the PSC to adopt formal rules, but rather would only suggest that an explicit reference to already existent guidelines would establish at least the outside parameters of inquiry in these cases and provide guidelines to other municipalities faced with justifying their surcharges in the future.
Accordingly, we hereby affirm the order of the PSC denying the petition of the City to initiate rulemaking. We also hereby acknowledge the propriety of PSC order to show cause No. 9516 and pre-hearing order No. 10940, holding that these orders, having survived appropriate challenge, have matured into orders impressed with the characteristics of the Florida Administrative Procedure Act, section 120.57, Florida Statutes (1981). See McDonald v. Department of Banking and Finance. As such, the standards set forth for consideration in these orders, together with the standards enunciated and referred to herein, absent formal rulemaking or adjudicative proceedings to the contrary, are to be deemed the applicable standards for consideration and review in surcharge cases.
It is so ordered.
ALDERMAN, C.J., and BOYD, OVERTON, McDONALD, EHRLICH and SHAW, JJ., concur.