435 So.2d 892 (1983)
FLORIDA PUBLIC SERVICE COMMISSION, Appellant,
v.
INDIANTOWN TELEPHONE SYSTEM, INC., et al., and Gulf Telephone Company, and Southern Bell Telephone and Telegraph Company, Appellees.
No. AN-486.
District Court of Appeal of Florida, First District.
July 15, 1983.
*893 Patrick K. Wiggins, Deputy Gen. Counsel, Florida Public Service Com'n, Tallahassee, for appellant.
David B. Erwin of Mason, Erwin & Horton, Tallahassee, and Lewis W. Petteway, Tallahassee, for Indiantown Telephone System, Inc., et al.
Edwin B. Browning, Jr., Madison, and Lewis W. Petteway, Tallahassee, for Gulf Telephone Co.
Earl B. Hadlow of Mahoney, Hadlow & Adams, Jacksonville, and William B. Barfield, J. Lloyd Nault, II, Miami, for Southern Bell Tel. and Tel. Co.
JOANOS, Judge.
The Public Service Commission ("PSC") appeals an order of the Division of Administrative Hearings determining that the PSC's notice of proposed agency action constituted a rule and therefore an invalid exercise of delegated authority due to failure to comply with the rulemaking requirements of Section 120.54, Florida Statutes. We reverse.
Section 364.07 gives the PSC the authority "to review intrastate [telephone] toll settlement agreements and disapprove any such agreement if such agreement is detrimental to the public interest." Southern Bell has bilateral toll settlement agreements with the other telephone companies operating in Florida. These other companies periodically report their costs and revenues for intrastate long distance calls and Southern Bell determines how much revenue goes to each company. The agreements basically provide each company enough revenue to cover operation and maintenance plus a certain rate of return on the rate base invested in intrastate long distance service. This is based on Southern Bell's rate of return for the last study period.
It is the PSC's position that this system creates cross-subsidization among the customers of the different telephone companies. Initially, the PSC gave notice of a proposed rule which provided a method for the distribution of intrastate toll revenues. This proposed rule was successfully challenged by several telephone companies. On April 22, 1982, hearing officer Tremor issued a final order determining that the proposed rule, which was supposed to implement Section 364.07, Florida Statutes, exceeded the statutory grant of authority and was therefore invalid. The hearing officer noted that under Section 364.07, the PSC has the authority to disapprove intrastate toll settlement agreements which are determined to be detrimental to the public interest, and not only did the PSC fail to make a determination as to the public interest, but even if such a determination had been made, the PSC could only disapprove the agreements, it could not rewrite, change, or modify the agreements. The hearing officer found that the proposed rule would have this effect. This final order finding the proposed rule invalid was not appealed.
On May 21, 1982, the PSC, pursuant to Rule 25-22.29 Fla. Admin. Code, issued a Notice of Proposed Agency Action to each telephone company in the state, notifying of its "intent to disapprove all existing agreements for the division of intrastate toll revenues." Set forth in the notice was a statement of the facts and a statement of policy that the basis of settlement in the intrastate toll settlement agreements rendered those "agreements detrimental to the public interest because it creates an inequitable system of cross-subsidization among local subscribers of the telephone companies." This policy statement was explained in greater detail in the notice of proposed agency action including the following:

*894 [t]o not be detrimental to the public interest, toll settlement agreements must provide for settlements that do not create such cross-subsidization among the local ratepayers of the various companies. To avoid such cross-subsidization, the toll settlement agreements must compensate each company for its cost of providing intrastate toll service. This cost of services includes the cost of capital, as well as operating expenses, taxes, and investments. With respect to the equity component of the cost of capital, the return on equity must recognize the financial leverage of the company.
A procedure was set forth for those affected to file petitions for hearings on the proposed agency action. The hearings would be held in accordance with the requirements of Section 120.57(1), (2), Florida Statutes. The notice further provided that if no petitions were filed, a final order would issue disapproving all toll settlement agreements and directing modified agreements to be submitted for review within 30 days.
The telephone companies (appellees) challenged the validity of the proposed agency action, contending it was actually a proposed rule under Section 120.54 and should be the subject of rulemaking procedures under that section. The PSC moved to dismiss the petitions challenging the notice, alleging the Division of Administrative Hearings lacked jurisdiction under Chapter 120; that the petitions stated no claim for which relief could be granted under Section 120.54; the notice was not a proposed rule, but was in the nature of a show cause order designed to focus disputed issues; and that the notice was not final agency action and would not become final until a hearing was held on the question whether the toll settlement agreements were detrimental to the public interest (petitions had been filed by several of the companies pursuant to the procedure set forth in the notice).
In a final order dated July 20, 1982, hearing officer Williams determined that the PSC's notice of proposed agency action constituted a rule and was an invalid exercise of delegated legislative authority for failure to comply with the rulemaking requirements of Section 120.54, Florida Statutes. Included in the hearing officer's conclusions were that the purpose of the notice was to announce a policy position which applied industrywide; that the notice contained a statement of general applicability that implements, interprets, or prescribes law or policy; and that the statement contained "no temporal or geographic limitations, does not arise from a set of facts involved in the adjudication of an individual case and, by its own terms, will have future application to all toll settlement agreements." The PSC appeals this final order.
On appeal, first of all the PSC contends that there is an important distinction between rules and proposed rules in the instant case. It is argued that there is a difference between challenging final agency action which is in effect a rule, even though not designated a rule by the agency, and an attempt to challenge as a proposed rule action which the agency has not designated a proposed rule. Appellant points out that while the appellees challenged the notice as a proposed rule, the hearing officer found that the action constituted a rule. Appellant argues that the notice did not constitute a rule or a proposed rule or any final agency action, but was intended only to define a controversy as a preliminary to an adjudicatory hearing, asserting its option to use non-rule proceedings to develop incipient policy and to use adjudication to develop the meaning of the phrase "detrimental to the public interest." Appellees contend there should be no significant difference between rules and proposed rules in the present context, and that since the notice has the effect of prescribing law or policy and is of general applicability, it is in effect a rule and must be subject to rulemaking requirements of Section 120.54. Appellees assert that the use of adjudication to develop incipient agency policy is limited to use in individual cases, and that an agency does not have complete discretion to ignore rulemaking in cases in which it is appropriate.
*895 We conclude that in the present context, there is a significant difference between agency action which is in effect a rule and proposed agency action which is not designated by the agency as a proposed rule, but may be a rule in effect if finally adopted. This is the necessary result if the agency's option to develop policy through either rulemaking or adjudication is to be preserved. If, as the case law discussed infra indicates, an agency cannot be compelled to use rulemaking as the sole means of developing agency policy, then the proposed action may not be challenged as a proposed rule unless it is designated as such by the agency.
The parties have directed us to and we have found no case which states that with regard to the development of policy in a case such as this one an agency has no option but to use rulemaking procedures. On the contrary, cases exist in which the courts indicated rulemaking would have been preferrable, but the agencies were not compelled to use that method as opposed to adjudication. In Florida Cities Water Co. v. Florida Public Service Commission, 384 So.2d 1280 (Fla. 1980), the Florida Supreme Court stated that the PSC was not required to announce its new policy on deductions allowed in figuring rates in a rule proceeding. "Administrative agencies are not required to institute rulemaking procedures each time a new policy is developed ... although that form of proceeding is preferrable where established industry-wide policy is being altered." In Anheuser-Busch, Inc. v. Department of Business Regulation, 393 So.2d 1177 (Fla. 1st DCA 1981), this court recognized that certain cases are more suited to rulemaking than to development of policy through adjudication, but indicated that the remedy is not to force rulemaking upon an agency, but to carefully review orders containing statements of policy to ensure that the policy is adequately explained. "[T]hough we will ordinarily `withhold judicial imperatives' for rulemaking, in deference to a coordinate branch of government, we are bound to give full effect to the APA's `self-enforcing' incentives for rulemaking  those requirements concerning orders by which `agencies will be pressed toward rulemaking by the necessity otherwise to explicate and defend policy repeatedly in Section 120.57 proceedings... .'"
In McDonald v. Department of Banking and Finance, 346 So.2d 569 (Fla. 1st DCA 1977), this court stated:
The APA does not in terms require agencies to make rules of their policy statements of general applicability, nor does it explicity invalidate action taken to effectuate policy statements of that character which have not been legitimated by the rulemaking process. But that is the necessary effect of the APA if the prescribed rulemaking procedures are not to be atrophied by nonuse... .
Remedies are described for challenging final agency action which has the effect of a rule. The McDonald opinion also states, however, that "[t]hat APA does not chill the open development of policy by forbidding all utterance of it except within the strict rulemaking process of Section 120.54." The requirement of rulemaking is "imposed only on policy statements of general applicability, i.e., those statements which are intended by their own effect to create rights, or to require compliance, or otherwise to have the direct and consistent effect of law" (emphasis in original). The notice of proposed agency action in the present case does not, by its own effect, create rights, require compliance, or otherwise have the direct and consistent effect of law, because the proposed agency action did not become final agency action. The notice provided for challenges and adjudicatory hearings pursuant to Section 120.57, and petitions for such hearings were filed.
While it appears rulemaking would suit the type of policy being developed in the present case, and may even be preferrable in order not to waste resources by repeatedly explicating and defending the policy in Section 120.57 hearings, see e.g. Barker v. Board of Medical Examiners, 428 So.2d 720 (Fla. 1st DCA 1983), and cases cited therein, there is no authority to compel the agency to choose rulemaking over adjudication *896 in this case. See also City of Tallahassee v. Florida Public Service Commission, 433 So.2d 505 (Fla. 1983) and City of Plant City v. Mayo, 337 So.2d 966, 974-75 (Fla. 1976) ("no statutory or constitutional impediment to implementations of change [through individual rate case rather than broadbased rulemaking proceedings] so long as interested and affected parties have a forum in which to challenge any change and the basis on which the action is taken is supported by the record.") Significantly, counsel for one of the appellees stated at oral argument that there would be no difficulty accepting policy development through adjudication had the telephone companies been notified individually of the proposed action and proceeded to individual hearings, instead of the single notice copies of which were sent to all of the telephone companies in the state. We conclude that the outcome of this case does not depend on whether the PSC deals with single or multiple parties and adjudication is not precluded because the orders resulting from Section 120.57 hearings may issue simultaneously rather than sequentially.
We hold that the PSC may proceed to develop the policy involved in the instant case through adjudication on a case-by-case basis. If the PSC continues to proceed only through adjudication, it will have to "`explicate and defend policy repeatedly in Section 120.57 proceedings.'" Anheuser-Busch at 1182, for each company to which it intends to attempt to apply that policy.
The order determining that the notice of proposed agency action is a rule, and as such, invalid for failure to comply with rulemaking procedures is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.
SHIVERS and WENTWORTH, JJ., concur.