551 So.2d 568 (1989)
FLORIDA PUBLIC SERVICE COMMISSION, Appellant,
v.
CENTRAL CORPORATION, Appellee.
No. 88-1889.
District Court of Appeal of Florida, First District.
October 19, 1989.
*569 David E. Smith, Public Service Com'n, Tallahassee, for appellant.
Wings S. Benton and Patrick K. Wiggins of Ransom & Wiggins, Tallahassee, for appellee.
JOANOS, Judge.
The Florida Public Service Commission has appealed from a final administrative order declaring Paragraph 7 of Public Service Commission Order 19095 to be an invalidly promulgated rule pursuant to Chapter 120, Florida Statutes. Under the facts of this case, we affirm.
An alternative operator service (AOS) provides operator-assisted long distance telecommunications services. Appellee Central Corporation is a type of AOS denominated an interexchange carrier (IXC). In December 1987, after receiving numerous general complaints from AOS users of excessive rates, the Commission opened Docket No. 871394-TP for the purpose of reviewing the regulatory requirements appropriate for "an emerging telecommunications industry providing long distance telephone services."
The initial action in this docket was taken when the Commission voted in February 1988 to set an expedited hearing to determine whether the provision of AOS service was in the public interest. In March 1988, the Commission voted that AOS providers would be required to hold subject to refund all revenues collected by those providers which exceeded the most comparable local exchange rate. This decision was embodied in Paragraph 7 of Order 19095, issued April 4, 1988. The Commission explained that the revenues were being placed subject to refund pending the results of the hearing on whether AOS was in the public interest, in order that the excess monies could be returned if it was decided that they were generated from inappropriate charges.
After the Commission denied its request to hold an evidentiary hearing prior to effectuating Paragraph 7, Central petitioned for an administrative determination that Paragraph 7 was an invalidly promulgated rule. The gravamen of the Commission's argument in support of Paragraph 7 was that it constituted an "interim rate order" pursuant to Section 364.055, Florida Statutes, and thus was not subject to the requirements of the Administrative Procedure Act, Chapter 120, Florida Statutes.
The rates which may be charged by most telephone companies regulated by the Commission are set with reference to a "rate base," in order that a reasonable rate of return on equity may be calculated. The Commission acknowledges that rates which may be charged by an IXC are not set in consideration of such a base, but are set forth by the IXC as part of the "tariff" which it is required to maintain on file with the Commission. See Rule 25-24.485, Florida Administrative Code.
During any proceeding for a change of rates, the Commission may authorize the collection of "interim rates" until the entry of a final order with regard to the change. § 364.055(1), Fla. Stat. The difference between the interim rate and the previously authorized rates must be collected subject to refund in the event the final order does not authorize the rate change. § 364.055(2)(a), Fla. Stat.
However, the specifically prescribed method for calculation of interim rates as set forth in Section 364.055(4) and (5)(a-b), makes this section impracticable of application to telephone companies such as Central, whose rates are not established with regard to a rate base. Further, the instant *570 "hold subject to refund" provision was not entered in a "proceeding for a change of rates," as authorized by Section 364.055(1), but rather in anticipation of a proceeding to determine whether AOS services were in the public interest. Therefore, we agree with the ruling of the hearing officer that Paragraph 7 cannot be classified as an interim rate order pursuant to Section 364.055(1) so as to be exempt from the requirements of the APA. See § 120.72(3), Florida Statutes (1987) (notwithstanding any provision of this chapter, all public utilities and companies regulated by the Commission shall be entitled to proceed under the interim rate provisions of chapter 364).
However, the Commission does have the statutory authority to take action upon receipt of consumer complaints of excessive rates. Section 364.14(1), Florida Statutes (1987), provides that
[w]henever the Commission finds, ... upon complaint, that the rates, charges, tolls, or rentals demanded, exacted, charged, or collected by any telephone company ... are unjust, unreasonable, unjustly discriminatory, unduly preferential, or in anywise in violation of law ... the Commission shall determine the just and reasonable rates, charges, tolls or rentals to be thereafter observed and in force and fix the same by order.
Therefore, the Commission may act by order to fix "just and reasonable rates" upon complaints that existing rates are unjust and unreasonable. The crux of this appeal therefore becomes whether Paragraph 7 as enacted and implemented in this case was an "order," that is, a final agency decision which does not have the effect of a rule, Section 120.52(11), Florida Statutes, or a "rule," an agency statement of general applicability which prescribes law or policy, including any form which imposes any requirement not specifically required by statute or an existing rule. § 120.52(16), Fla. Stat.
The hearing officer determined that Paragraph 7 had the effect of a rule in that: 1) it was of general applicability, i.e., it affected all Florida AOS providers, and 2) it imposed an immediate requirement not otherwise required by statute or existing rule, that is, in light of the "hold subject to refund" language, AOS providers either had to change previously approved rates to match those charged by local exchange companies, or set monies aside to cover the potential refund obligation. We agree.
The Commission argued below, and before this court, that the temporary nature of Paragraph 7, that is, its applicability only until the August 1988 proceeding, precluded its classification as a rule. However, a temporally limited agency action is properly denominated a rule if it has the consistent effect of law, that is, is consistently applicable throughout its existence to an entire group rather than to one member of that group. Balsam v. Department of Health and Rehabilitative Services, 452 So.2d 976 (Fla. 1st DCA 1984). Paragraph 7 is by its terms applicable to every AOS provider in Florida, regardless of the actual rates being charged by individual providers, for the entire duration of its applicability.
The Commission further argues that Paragraph 7 does not explicitly require AOS providers to take any previously unrequired action. It merely notifies them that they might be required to meet a contingent liability in the future, leaving it to their sole discretion how to meet that contingency. We find that this contention ignores reality, in that some action, of whatever nature, must be taken by these companies to meet the liability for these rate differentials in the event it is imposed.
We are not unmindful of the principle that rulemaking cannot be forced upon an agency and that policy may be developed through the adjudication of individual cases. See McDonald v. Department of Banking and Finance, 346 So.2d 569 (Fla. 1st DCA 1977) (while the Florida Administrative Procedure Act requires rulemaking for policy statements of general applicability, it also recognizes the inevitability and desirability of refining incipient agency policy through adjudication of individual cases).
*571 However, both rulemaking and the adjudication of individual cases fulfill administrative due process requirements of notice, hearing and judicial review. Here, the PSC followed neither path. There was no rulemaking as envisioned by Section 120.54, Florida Statutes, nor was there a proceeding as envisioned by Section 120.57, Florida Statutes. Interested and affected persons had no forum in which to challenge the PSC's imposition of a new requirement, and there was no record to review to determine if the basis for the action was supported. Thus, the instant agency action is not the type of order agencies are required to utilize when making decisions affecting substantial interests on a case-by-case basis.
Therefore, because Paragraph 7 of PSC Order 19095 is consistently applicable throughout its existence to every Florida AOS provider, and because its effect is to impose requirements on these companies previously unimposed by statute or pre-existing rule, we find that the hearing officer was correct in her classification of this provision as a rule subject to the requirements of Section 120.54, Florida Statutes. Because those requirements were admittedly not followed by the Commission in this case, the provisions of Paragraph 7 cannot be enforced.
We do not by this opinion hold that the Commission cannot, by order, fix reasonable rates for a telephone company against whom complaints of excessive rates have been filed, pursuant to the authority granted by Section 364.14, Florida Statutes. It simply cannot do so in the form of a rule without following the statutory procedures for the promulgation of such rules.
The order of the hearing officer is affirmed.
SHIVERS, C.J., concurs.
ERVIN, J., dissents with opinion.
ERVIN, Judge, dissents.
I had assumed that following this court's seminal decision in McDonald v. Department of Banking & Fin., 346 So.2d 569 (Fla. 1st DCA 1977), we had moved away from the sterile exercise of attempting to classify agency action as either a rule or an order, as exemplified in such pre-McDonald opinions as Price Wise Buying Group v. Nuzum, 343 So.2d 115 (Fla. 1st DCA 1977), and State of Fla., Dep't of Admin. v. Stevens, 344 So.2d 290 (Fla. 1st DCA 1977). The majority's opinion unfortunately furnishes a bright signal to litigants that this type of review mechanism remains not only alive but exceedingly well  despite the absence of any explicit authority in our Administrative Procedure Act (APA) for invalidating agency action having the characteristics of a rule, as defined in Section 120.52(16), Florida Statutes (1987), but not formally adopted as such.
I conclude that Public Service Commission Order No. 19095 is just what it purports to be: an order rather than a rule. As such, it does not fall within the definition of a rule as provided in section 120.52(16):
"Rule" means each agency statement of general applicability that implements, interprets, or prescribes law or policy or describes the organization, procedure, or practice requirements of an agency and includes any form which imposes any requirement or solicits any information not specifically required by statute or by an existing rule.
(Emphasis added.)
Order No. 19095 requires alternate operator services (AOS) providers to hold, subject to refund, all revenues in excess of an amount certain, until the disposition of the revenues is determined by the hearing set in the order. The appellee argues that this order is a rule, chiefly because it is generally applicable to all AOS providers, and because it is immediately enforceable; thus, it is argued, the order prescribes law or policy without being subjected to the strictures of rulemaking. To the contrary, the Public Service Commission (Commission) argues that although orders may also prescribe law, the order on review cannot possibly be a rule, because its only effect is to ensure that certain monies be set aside until policy can be developed and enunciated *572  "prescribed," within the meaning of section 120.52(16).
In order to decide whether the subject order is a rule, it is necessary for us to examine some of the primary objectives behind rulemaking and determine whether those considerations are applicable to the action on review. Perhaps the most important goal of rule adoption is fair notice to the public of the agency's intended action, described by this court as "`clos[ing] the gap between what the agency and its staff know about the agency's law and policy and what an outsider can know.'" McDonald, 346 So.2d at 580 (quoting K. Davis, Discretionary Justice 102 (1969) (hereinafter Davis)). Rulemaking is also designed to assure "`mature consideration of rules of general application,'"[1] as well as to impel "agencies to `confine their own discretion' by `moving from vague standards to definite standards to broad principles to rules.'" Id. (quoting Davis, at 55).
Applying the above considerations to the case at hand, it is obvious that the Commission's order is not impressed with any of the benchmarks of policy for which the provisions of Section 120.54, Florida Statutes (1987), relating to rulemaking, are required. The Commission itself identifies the order as an interim measure designed to ensure consumer protection during the time that the Commission examines the issues presented by the complaints it has received. As such, the order under review can neither be impressed with the "mature consideration" intended for a rule, nor can it be viewed as the initial step in a progression from vague standards to definite standards and finally to broad principles, given the agency's confession of a lack of adequate information on the merits presented by the complaints of excessive charges by AOS. Due to the agency's lack of formulation of any policy at the time of the entry of the order on review, we are not confronted with any gap between what the agency knows and what the public is unaware of. Indeed, at the time of the order's entry, it appears that the agency itself knew little more than would an interested outsider, in that the purpose of the public hearing, as provided in the order, was to obtain information from which the Commission hoped to develop an intelligent policy judgment that it was then unable to state. In my judgment, none of the considerations that are relevant to rule adoption is present here.
As observed in McDonald, the framers of the APA "had no intention of building an impenetrable wall between policymaking and adjudication." McDonald, 346 So.2d at 581. "The folly of imposing rulemaking procedures on all statements of incipient policy is evident[,]" because to do so will hardly encourage agencies to "structure their discretion progressively by vague standards, then definite standards, then broad principles, then rules." Id. at 580 (emphasis added). Although the definition of a rule "`obviously could be read literally to encompass virtually any utterance by an agency,'"[2] nevertheless, to do so makes it impossible for an agency to "wisely sharpen its purposes through adjudication before casting rules." Id. at 581 (citing Shapiro, The Choice of Rulemaking or Adjudication in the Development of Administrative Policy, 78 Harv.L.Rev. 921, 927 (1965)).
In a number of cases this court has recognized that it is unwise to force agencies to pigeonhole their activities into "rule" versus "order" categories. For example, in Florida Pub. Serv. Comm'n v. Indiantown Tel. Sys. Inc., 435 So.2d 892 (Fla. 1st DCA 1983), holding that the Commission could proceed to develop policy through adjudication rather than rulemaking, this court said that "there is no authority to compel the agency to choose rulemaking over adjudication." Id. at 895-96. Furthermore, in Department of Revenue v. U.S. Sugar Corp., 388 So.2d 596, 598 (Fla. 1st DCA 1980) (Ervin, J., concurring), it was noted that the classification of agency *573 action as a rule or order is not important; rather the relevant inquiry is whether the agency has adequately explained its action, and, if it has, whether its action is within the discretion delegated to it. If an agency has explained itself and has acted within its delegated authority, then the court should sustain the action even though the agency's statement "may have all the characteristics of section 120.52[16]'s definition of rule." Id. As was observed in White Advertising Int'l v. State of Fla., Dep't of Transp., 368 So.2d 411, 413 n. 5 (Fla. 1st DCA 1979) (Ervin, J., concurring and dissenting) (citing 1 K Davis, Administrative Law Treatise 286 (1958)), "Professor Davis' solution to deciding whether such borderline activities [i.e., categorizing as rule or order] should be validated is `to avoid classifying them  to skip the labeling and to proceed directly to the problem at hand.'"
More than six years ago this court rejected an argument that the Board of Medical Examiners' interpretation of Section 458.311(1)(b), Florida Statutes (1979), which resulted in the applicant being barred for licensure as a medical practitioner because he had not graduated from an approved medical school, was invalid for the reason that the interpretation had not been adopted as a rule. Barker v. Board of Medical Examiners, 428 So.2d 720 (Fla. 1st DCA 1983). In upholding the Board's nonrule policy decision, we made the following observations:
The fact, however, that no rule was extant at the time Barker applied for licensure does not necessarily mean the Board's action was void. The time has long since passed (if ever it existed) that agency action was mechanically invalidated simply because no rule was in effect. Certain opinions from this court during our early experience with Florida's 1974 Administrative Procedure Act may have so indicated. Our academic endeavors in attempting to label the action either rule or nonrule to determine whether or not it fell within section 120.52(14)'s [now renumbered as 120.52(16)] definition of a rule have now been largely discarded. There are, however, costs exacted upon an agency which avoids the rulemaking procedure provided by section 120.54, chief among those being that the agency may be required repeatedly to defend its nonrule policy decisions in each case.
Id. at 722 (citations omitted).
The above approach appears to have been approved by the Florida Supreme Court, insofar as it relates to an agency's formation of policy. In City of Tallahassee v. Florida Pub. Serv. Comm'n, 433 So.2d 505 (Fla. 1983), the supreme court, while denying the city's petition to force the Commission to initiate rulemaking, made the following observations:
The statutes outlining the PSC's jurisdiction and duties are necessarily general in nature, providing for flexibility in the exercise of its power.
To the extent the PSC solidifies its position on policy in a particular area, we believe such established policy should be codified by rule. However, as in the instant case, if the PSC seeks to exercise its authority on a case-by-case basis until it has focused on a common scheme of inquiry derived through experience gained from adversary proceedings, then we hold that there should be erected no impediment to the PSC's election of such course.
* * * * * *
Currently, by its own actions and admissions, the PSC has shown that ... it is in a formulative stage regarding policy. As such, no greater restraints should be imposed on the exercise of the PSC's authority other than those already found in section 366.06(1) as well as those factors it has, and subsequently will, expressly raise either in its orders or through adversary proceedings in this Court.
* * * * * *
We have held in the past and continue to hold in this case, that administrative agencies may develop policies by adjudication and that formal rulemaking is not initially necessary in all cases.
Id. at 507-08 (emphasis added).
In the instant case, despite the contrary admonition of a number of scholars and *574 judges, appellee asks this court to approve the hearing officer's order that places the agency's action into the rulemaking category  an exercise which appears to me to be one of mere labeling  rather than permit the agency to proceed with incipient policymaking by interim order, and then to final action. If the latter course were approved, this court would be in a position of reviewing whether the action taken was correct, rather than being restricted to the limited question, at this truncated juncture, of whether the action should be invalidated, because not adopted as a rule.
Appellee also argues, relying upon Balsam v. Department of Health & Rehabilitative Servs., 452 So.2d 976 (Fla. 1st DCA 1984), that action which has industry-wide effect is necessarily a rule, regardless of the duration of the agency action. I do not regard Balsam as standing for such a broad proposition. The court's holding in Balsam, which invalidated a moratorium imposed by the agency on receipt of certificate of need (CON) applications, appears largely motivated by the court's recognition that if appellant, a party substantially affected by the agency's imposition of the moratorium, had not been afforded the review mechanism provided by the rulemaking procedures of Chapter 120, the appellant would have had no review until the next "batching cycle" of CON applications. Id. at 977. By that time, appellant would have been deprived of a competitive advantage. Id. In fact, the result of our decision in Balsam was to order HRS to make a determination on appellants' application for a CON "as soon as possible." Id. at 978.[3] In the present case, Central Corporation, however, has been provided a point of entry into the administrative proceeding, and indeed has now had a full section 120.57(1) hearing, pursuant to the very order it challenges. Thus, in my judgment, the policy underpinning our decision in Balsam is inapplicable to the instant case.
The very fact that Central has been afforded dual entries into the administrative arena via both the rule challenge and adversary adjudicatory avenues is perhaps an even more fundamental reason why the order on review should not be invalidated as a nonadopted rule, or why the rule challenge proceeding should not be entertained. The practice of allowing simultaneous, dual administrative proceedings was condemned in Fox v. State Bd. of Osteopathic Medical Examiners, 395 So.2d 192 (Fla. 1st DCA 1981), in which we held that declaratory statement proceedings brought pursuant to section 120.565 of the APA could not be pursued on issues simultaneously litigated in a section 120.57 adjudicatory proceeding. See also Couch v. State of Fla., Dep't. of Health & Rehabilitative Servs., 377 So.2d 32 (Fla. 1st DCA 1979). Similarly, in the case at hand, issues were simultaneously litigated under Sections 120.57 and 120.56, Florida Statutes (1987). In my judgment, it is questionable whether the party affected by the agency's action has the legal right to proceed under both statutes, in that the order which it is challenging as a nonadopted rule itself provides the party with a formal hearing, which was sought, and which has now been concluded. One has to question whether permitting such dual reviews, under the circumstances at bar, results in an undesirable manipulation of the procedural protections provided in the APA.
For the above reasons I would reverse the hearing officer's order of invalidation.
NOTES
[1] McDonald, 346 So.2d at 580 n. 6 (quoting NLRB v. Wyman-Gordon Co., 394 U.S. 759, 764, 89 S.Ct. 1426, 1429, 22 L.Ed.2d 709, 714 (1969)).
[2] McDonald, 346 So.2d at 581 (quoting Pacific Gas & Elec. Co. v. Federal Power Comm'n, 506 F.2d 33, 37 (D.C. Cir.1974)).
[3] Another pertinent reason for invalidating the agency's action in Balsam was that there was no statutory authority for the imposition of a moratorium, in that Section 381.494(5), Florida Statutes (1981), required the agency, by rule, to provide for the submission of CON applications on a "timetable or cycle basis." Balsam, 452 So.2d at 977. Consequently a moratorium on such applications would clearly have been in contravention of the authority delegated to the agency by the legislature. In contrast, the agency here is specifically given the authority by Section 364.14(1), Florida Statutes (1987), to determine by order whether the rates demanded are "just and reasonable."