600 So.2d 1240 (1992)
STATE of Florida, BOARD OF TRUSTEES OF the INTERNAL IMPROVEMENT TRUST FUND and Florida Audubon Society, Appellants,
v.
LOST TREE VILLAGE CORPORATION; Idlewyld Corporation, Inc.; Keewaydin Club Colony Joint Venture, John D. Remington & Bolton S. Drackett, Co-Trustees; Theodore Watrous, Thomas Munz, Warren Noden, Mariner Properties, Inc., and Roger Broderick, Appellees.
Nos. 91-1813, 91-1865.
District Court of Appeal of Florida, First District.
June 11, 1992.
*1241 Kenneth J. Plante, Gen. Counsel, Debra W. Schiro, Kelly Brewton, Lanette M. Price, and John W. Costigan, Asst. Gen. Counsels, Dept. of Natural Resources, Tallahassee, for appellants Board of Trustees of Internal Imp. Trust Fund.
Joseph Z. Fleming, Miami, for appellant Florida Audubon Soc.
Robert A. Routa, Tallahassee, for appellee Lost Tree Village Corporation.
Anne Longman and Steve Lewis, of Messer, Vickers, Caparello, Madsen, Lewis, Goldman & Metz, Tallahassee, for appellees Idlewyld Corporation, Inc. and Keewaydin Club Colony Joint Venture.
M. Christopher Bryant, of Oertel, Hoffman, Fernandez & Cole, Tallahassee, for appellees Thomas Munz, Theodore Watrous, Warren Noden, Mariner Properties, Inc., and Roger Broderick.
SHIVERS, Judge.
Appellants seek reversal of a final order of the Division of Administrative Hearings (DOAH) finding a moratorium adopted by the Board of Trustees of the Internal Improvement Fund (Board) is an invalid rule constituting an invalid exercise of delegated legislative authority, due to the failure of the Board to materially follow applicable rulemaking procedures required by section 120.54, Florida Statutes (1989), a section of the Florida Administrative Procedure Act (APA). We reverse the final order of DOAH.
The Board, comprising the Governor and members of the Cabinet, is the agency authorized pursuant to section 253.03(1), Florida *1242 Statutes (1989), to acquire, manage, protect and dispose of state-owned lands, including properties owned by the state by right of its sovereignty. Section 253.03(7), Florida Statutes (1989), mandates that the Board "adopt rules and regulations" necessary to carry out its statutory duties. The responsibilities of the Board include the consideration of requests for activities on sovereign submerged lands.
Chapter 18-21, Florida Administrative Code, adopted by the Board in furtherance of the directive to promulgate rules, is titled "Sovereignty Submerged Lands Management." On August 22, 1989, the Board voted to defer consideration of applications for use of sovereign submerged lands adjacent to unbridged, undeveloped, or substantially undeveloped coastal barrier islands. The decision not to act was designated as a temporary "moratorium" on authorizations for use of said sovereign submerged lands, pending adoption of amendments to Rules 18-21.003 and 18-21.004, Florida Administrative Code.
The Board's decision to defer action on applications evolved from several key events. In June 1989, the Board considered whether to approve the recommendation of the Division of State Lands (Division) in favor of granting a five-year sovereign submerged land lease for a 42-slip, private residential docking facility on a coastal island in Levy County. Opponents of this development at Atsena Otie Key argued the lease would adversely impact natural resources. On the basis that it had no clear policy to evaluate such leases, the Board deferred the request and directed the Division to analyze natural resource issues and current protective measures, and to report its findings. The Division's report concluded the Board lacked a policy that would permit consideration of the impacts on coastal islands that could result from the granting of sovereign submerged land leases.
As a result of the report, the Board endorsed, "in concept," a policy precluding the use of sovereign submerged lands in any manner that would facilitate upland development of certain coastal islands and would cause impacts of a destructive nature on the islands. The Division was directed to develop a coastal island policy consisting of comprehensive guidelines to consider current levels of development, existing land authorizations, and impacts on submerged resources. On the basis that it would take time to develop a comprehensive policy of protective management of certain sovereign submerged lands, the Board approved the August 1989 moratorium on consideration of applications.
On December 19, 1989, and again on February 6, 1990, the Board deferred consideration of an interim policy governing the use of sovereign submerged lands adjacent to unbridged coastal islands. The Board extended and modified the temporary moratorium on May 8, 1990, and directed staff to begin rulemaking on a rule to serve as interim policy, pending adoption of a comprehensive policy and a rule governing coastal islands. Certain exceptions to the moratorium were allowed, concerning construction of two-slip private residential docks and repair or maintenance of existing utility lines. On June 12, 1990, the Board approved a draft of proposed rules related to leasing of state-owned lands adjacent to undeveloped coastal islands, and directed staff to notice the rules for adoption, hold a series of public hearings, and report to the Board for final action in September 1990.
On August 10, 1990, the Board officially noticed the proposed amendments to the above stated rules. On August 29, 1990, appellee Lost Tree Village Corporation filed a petition pursuant to section 120.54, Florida Statutes (1989), with the DOAH, challenging the proposed amendments. On September 4, 1990, the petition was consolidated with other similar challenges. Petitioners, including the instant appellees, also challenged the then year-old moratorium, contending it is a nonrule rule constituting an invalid exercise of the Board's delegated legislative authority. On September 17, *1243 1990, the Florida Audubon Society (Audubon) sought and eventually was granted intervenor status on behalf of the Board's position. On October 9, 1990, the Board accepted a status report on the proposed rule amendments. Prior to accepting the proposed changes, the Board approved the request of the Governor's Interagency Management Committee for additional time to review the proposals. On December 18, 1990, the Board approved the withdrawal of the original rule concerning development of coastal islands, authorized changes to the proposed rules, and directed staff to notice for adoption the proposals as amended. Additionally, the Board voted to continue the moratorium until adoption of a coastal barrier island rule.
On February 8, 1991, the Board published its notice of withdrawal of the proposed amendments, and several of the petitions were voluntarily dismissed. However, appellees remained parties to the suit to challenge the moratorium. On February 11, 1991, the parties met before the DOAH hearing officer. They agreed the issue was whether the Board's moratorium is a rule within the definition of the APA. In May 1991, DOAH issued the final order holding the moratorium to be an invalid rule, and the Board and Audubon appealed.
Appellants assert that the moratorium is consistent with the Board's duties under the public trust doctrine, that it is permissible under the applicable rules and statutes, and that the findings below suggest the hearing officer ignored McDonald v. Dep't of Banking & Finance, 346 So.2d 569 (Fla. 1st DCA 1977), as it pertains to the implementation of a moratorium outside the requirements of the APA. The central issue is whether the hearing officer erred in determining the moratorium is an invalid "rule" and an invalid exercise of delegated legislative authority by the Board.
The Board is an "agency" as that term is defined in section 120.52(1), Florida Statutes (1989). See Decarion v. Martinez, 537 So.2d 1083 (Fla. 1st DCA 1989). Under Article X, section 11, of the Florida Constitution (1970), sovereign submerged lands are held in trust for the people of this state. Private use of those lands is permissible when authorized by law. As an administrative body not specifically created in the Florida Constitution, the Board is a statutory entity and derives only those powers specified therein. See sections 253.02(1) and 120.54(15), Florida Statutes (1989); Grove Isle, Ltd. v. State Dep't of Envir. Reg., 454 So.2d 571 (Fla. 1st DCA 1984). The Board is entrusted with the express constitutional duty to protect the public's interest in sovereign submerged lands. Appellants contend it was in furtherance of its duty that the Board decided in August 1989 not to act on certain applications for private preemptive use of state-owned lands. Although the Board, acting in its proprietary capacity as owner of sovereign submerged lands, "is different from other state agencies acting in a regulatory capacity," Board of Trustees v. Barnett, 533 So.2d 1202, 1206 (Fla. 3d DCA 1988), the policies underlying the public trust doctrine do not of themselves exempt the Board from the operation of the APA. See id. at 1205. Likewise, the Board is not free to act arbitrarily in either its proprietary or regulatory role. Id. at 1206.
Our analysis of the issue on appeal begins with the pertinent sections of the APA defining "rule":
(16) "Rule" means each agency statement of general applicability that implements, interprets, or prescribes law or policy or describes the organization, procedure, or practice requirements of an agency and includes any form which imposes any requirement or solicits any information not specifically required by statute or by an existing rule. The term also includes the amendment or repeal of a rule. The term does not include:
(a) Internal management memoranda which do not affect either the private interests of any person or any plan or procedure important to the public and which have no application outside the agency issuing the memorandum.
*1244 Section 120.52(16)(a), Florida Statutes (1989). Here, the hearing officer construed the Board's moratorium as a rule, and next determined whether the rule constitutes an invalid exercise of delegated legislative authority by the Board. Section 120.52(8), Florida Statutes (1989), states:
(8) "Invalid exercise of delegated legislative authority" means action which goes beyond the powers, functions, and duties delegated by the Legislature. A proposed or existing rule is an invalid exercise of delegated legislative authority if any one or more of the following apply:
(a) The agency has materially failed to follow the applicable rulemaking procedures set forth in s. 120.54;
(b) The agency has exceeded its grant of rulemaking authority, citation to which is required by s. 120.54(7);
(c) The rule enlarges, modifies, or contravenes the specific provisions of law implemented, citation to which is required by s. 120.54(7);
(d) The rule is vague, fails to establish adequate standards for agency decisions, or vests unbridled discretion in the agency; or
(e) The rule is arbitrary or capricious.
To determine whether the Board's decision to defer consideration of applications for use is a rule depends in part on the effect of the moratorium. State Dep't of Admin. v. Harvey, 356 So.2d 323 (Fla. 1st DCA 1977). We have previously considered the effects of a moratorium imposed by the State of Florida Department of Health and Rehabilitative Services (HRS) on the receipt of certain applications in Balsam v. Dep't of Health and Rehabilitative Services, 452 So.2d 976 (Fla. 1st DCA 1984). Appellants in Balsam filed a letter of intent to apply for a certificate of need to construct a 100-bed psychiatric hospital. HRS imposed an administrative moratorium on applications to be reviewed within the immediate time period but stated that, upon proper application, appellants' certificate would be reviewed in the next one of the reviewing cycles scheduled pursuant to an administrative rule. A timely second letter of intent was filed, but appellants also challenged the policy of deferral as an invalid rule, claiming they had lost the statutory right of review of their initial application. The appeal followed final administrative action, in which a hearing officer had determined the moratorium was not a rule subject to APA rulemaking procedures. We reversed, finding "[t]he pervasive and consistent effect of the moratorium upon those seeking certificates of need is in no way lessened by the moratorium's finite duration." Id. at 978.
Like the Board here, HRS in Balsam contended the moratorium was not a rule, and that it was justified because it gave the agency time to attempt to satisfy the legislative mandate to promulgate needed policies or methodologies. Balsam is distinguishable in part because a statute and rule expressly required HRS to review applications on a timely basis, whereas here the Board is not subject to such a time requirement and, in fact, is not even required to accept applications.
Appellants emphasize the factual similarities between McDonald and the Board's moratorium here. Specifically, we are referred to our comment in a footnote in that decision:
The Florida APA ... simply disregards as legally insignificant, however helpful it may be as public notice, an agency statement of purpose or policy which is neither rule nor order. The Comptroller's recent public declaration of a moratorium on new grants of banking authority pending action on certain legislation affecting the Comptroller's duties, was such a statement.
Id., 346 So.2d at 581 n. 7. Although we acknowledged in Florida League of Cities, Inc. v. Admin. Comm'n, 586 So.2d 397, 406 (Fla. 1st DCA 1991), that McDonald is the "seminal case" interpreting what constitutes a "rule" under the APA, McDonald is not dispositive of the issue concerning the Board's moratorium. First, *1245 McDonald is not a "moratorium" decision, and our references therein to the Comptroller's declaration of a moratorium are clearly dicta. Second, without determining the import of this distinction, we note the basis for the moratorium to which we alluded in McDonald was the pending action on legislation affecting the Comptroller, whereas the deferral in the case sub judice was initiated to permit additional in-house staff development of policies.
We are mindful of the need of an agency to "record and communicate emerging policy," and we reaffirm our view in McDonald that "[t]he folly of imposing rulemaking procedures on all statements of incipient policy is evident." Id., 346 So.2d at 580.
The Board relies on the argument that, unlike the statutory scheme in Balsam, nothing in the statute or rules governing its management of sovereign submerged lands requires it to adhere to a specific timetable. On that basis, the Board says that if appellees have no right to the use of sovereign submerged lands, then the deferral of consideration of their applications does not deprive them of any guarantees under the laws of Florida. On this point, we must agree.
Section 253.03(14), Florida Statutes (1989), requires the Division to timely review applications for authority to use sovereign submerged lands. An application that requires action by the Board must be submitted to the Board for approval or denial "within 90 days after receipt of the original application or the last item of timely requested additional information." If the staff review of the application is not completed within the 90-day period, the Division is required to submit reasons for the non-completion as well as an estimated date for submission of the application to the Board "for its action." This statutory language does not impose any specific timetable on the Board itself. We therefore find appellants' argument that Balsam is applicable here to be unpersuasive, since the statute there expressly imposed a timetable for review by HRS, whereas here, no timetable is expressly set forth.
We strongly emphasize, however, our concerns about the Board's duty to act in a manner that comports with the dictates of reason. At a minimum, due process involves reasonable notice and a fair opportunity to be heard before rights are decided. Peoples Bank of Indian River County v. State Dep't of Banking & Finance, 395 So.2d 521 (Fla. 1981). The Third District Court in Barnett has specifically rejected the argument that an agency, acting in either its proprietary or regulatory capacity, is excused from adhering to due process principles.
Here, the Board's proprietary management and administration of submerged lands permit it to exercise discretion to approve activities on sovereign lands, so long as the activities are not contrary to the public interest. See Rule 18-21.004(1)(a), Florida Administrative Code. Nowhere within the various administrative procedures is a time frame imposed on the Board's consideration of applications for activities on state-owned submerged lands. Section 253.03(14), Florida Statutes (1989), authorizes the Board to act on applications for private preemptive use of sovereign lands and invests the Board with considerable discretion in determining when to act. We have therefore been unable to find any sanction in the law for the Board's decision not to act on an application, and we believe this evinces a legislative intent to allow the Board sufficient flexibility to oversee state-owned lands and to formulate policies consistent with its duties under the public trust doctrine. Accordingly, we hold the suspension of consideration of applications is within the Board's discretion if not done arbitrarily or capriciously. We stress that our decision should not be interpreted to permit an indefinite and unwarranted delay in the Board's acting on applications, as section 253.03(14), Florida Statutes (1989), implicitly requires the Board to consider applications within a reasonable time.
*1246 Appellees contend the moratorium "implements" policy so as to invoke the rulemaking procedures of the APA. We disagree, under the circumstances of this case. See Florida League of Cities; McDonald. Cf. Department of Nat. Resources v. Wingfield Devel. Co., 581 So.2d 193 (Fla. 1st DCA 1991). Here, the purpose of the moratorium was to allow the Board to consider the alternatives prior to solidifying its policy regarding applications for activities on sovereign submerged lands. The Board's decision to defer consideration of applications fits the definition of incipient or evolving policy. McDonald. Admittedly, the moratorium meets the requirement of "general applicability" under the definition of "rule," in that the deferral of consideration applies to all applicants. However, it is not intended by its own effect "to create rights or to require compliance," see Florida League of Cities, 586 So.2d at 406, since the statutory and administrative law of Florida provides no guarantee or other assurance that appellees may be permitted to conduct activities on state-owned lands. Further, the moratorium does not purport to adversely affect any substantive rights of appellees, see Harvey, 356 So.2d at 325, nor does it constitute a denial or withdrawal of a right previously granted, as occurred in Barnett. The delay does not impose any new or additional requirement on the appellees, as distinguished from the interim rate provision involved in Florida Public Serv. Comm'n v. Central Corp., 551 So.2d 568 (Fla. 1st DCA 1989). And, unlike the agency action in Balsam, the Board's decision to delay consideration of applications here does not have the direct and consistent effect of law. Accordingly, appellees' argument here is without merit.
The evidence presented to DOAH does not support the finding that the rights of all applicants for use of sovereign submerged lands are clearly affected by the Board's refusal to process and either grant or deny applications. In Florida League of Cities, 586 So.2d at 410, we stated "[t]he doctrine of nondelegation does not preclude the exercise of all agency discretion." The record demonstrates the Board acted within its discretionary authority granted in section 253.03, Florida Statutes (1989), and the related administrative rules. It follows, therefore, that DOAH erred in finding the Board acted arbitrarily in declaring the moratorium. For the reasons stated above, we reverse the final order of DOAH.
REVERSED.
MINER, J., concurs.
WOLF, J., dissents, with opinion.
WOLF, Judge, dissenting.
The majority finds that since appellees have no right to the use of sovereign submerged lands, then the deferral of consideration of their applications does not deprive them of any guarantees under the laws of Florida and, thus, the moratorium does not constitute a rule because it does not constitute a denial or withdrawal of a previously granted right. I disagree. While appellants are not entitled to use sovereign submerged lands, they were, prior to the adoption of the moratorium, legally entitled to consideration of their application for such use within a reasonable period of time.
As the majority notes, section 253.03(14), Florida Statutes, requires the division to timely review applications for authority to use sovereign submerged lands. An application that requires action by the board must be submitted to the board for approval or denial "within 90 days after receipt of the original application or the last item of timely requested additional information." If the staff review of the application is not completed within the 90-day period, the division is required to submit reasons for the noncompletion as well as an estimated date for submission of the application to the board "for its action." The language of section 253.03(14), Florida Statutes, contemplates a forward-moving process of determination of applications, not a static *1247 process such as the absolute standstill which came about as a result of the moratorium. Implicit in the wording of the statute is the legislative intent that the board make a determination on applications within a reasonable period of time.
In addition, the rule that is intended to implement the responsibilities of the board to administer and manage state lands contemplates that an applicant be provided a decision within a reasonable period of time. Rule 18-21.004, Florida Administrative Code, sets out policies, standards and criteria for the board's essential task of "determining whether to approve, approve with conditions or modifications, or deny all requests for activities on sovereign submerged lands." Irrespective of whether or not it approves an application, the board must make a determination within a reasonable period of time. Until its rules are amended or abrogated, an agency like the board must honor those rules. Decarion v. Martinez, 537 So.2d 1083 (Fla. 1st DCA 1989). The effect of the prolonged moratorium on applications is that the board failed to make any kind of determination whatsoever regarding applications for activities on sovereign submerged lands.
The record supports the finding in the final order that the adoption of the moratorium "constitutes a departure from or an amendment to chapter 18-21, Florida Administrative Code, by effectively removing a class of state lands from the operation of that rule chapter for different treatment," even if the "treatment" is, in effect, no treatment at all because of the board's inaction. Balsam v. Department of Health and Rehabilitative Services, 452 So.2d 976 (Fla. 1st DCA 1984). This court held in Balsam that the designated "temporary" nature of the moratorium, even if accurate, did not permit its imposition outside of the requirements of the APA if the effect was pervasive and consistent. See also Florida Pub. Serv. Comm'n v. Central Corp., 551 So.2d 568 (Fla. 1st DCA 1989). This case is indistinguishable from Balsam. In the absence of a duly adopted rule, the board's action in adopting a policy of deferred consideration should be invalid.
I would affirm.