KLEIN, Judge.
Lost Tree Village Corporation appeals from a final order of the Division of Administrative Hearings which determined that certain proposed amendments to rules 18-21.003 and 18-21.004 of the Florida Administrative Code are valid. These amendments will prevent construction of bridges and utility lines over submerged sovereign land owned by the Internal Improvement Trust Fund (IITF). Lost Tree challenged the amendments because it wants to construct a residential development and golf course on seven undeveloped islands in the Indian River. We affirm.
Generally speaking, islands are defined in the amendments as including all islands which are “completely separated from the coastal mainland by marine or estuarine waters,” all islands within aquatic preserves except for specifically named lakes and rivers, and “other islands within confined or semi-confined marine or estuarine waters with an open connection to the Atlantic Ocean or Gulf of Mexico, such as bays, lagoons or inlets.” Fla. Admin. Code R. 18-21.003. The amendments apply to islands which were not connected to the mainland by a bridge suitable for automobile traffic and which had a density of less than one structure per five acres as of December 18, 1990. The amendments also restrict, but do not eliminate, docks. There was evidence that 867 islands would be affected by these rules.
Lost Tree contends that pursuant to section 120.52(8)(b), Florida Statutes (1991), IITF has exceeded the rule making authority delegated to it by the legislature, arguing that, although the legislature has adopted a number of regulatory programs which affect islands like these, it has not chosen to prohibit their development. It also argues that the legislature has authorized local governments to regulate the development of these islands through section 125.01(l)(g), and that IITF has usurped that power.
IITF correctly responds that it is not regulating development of these islands, but rather is regulating the use of its own submerged land. It points out that islands such as these can still be developed by the use of generators for making electricity and septic tanks, and that those uses would be regulated by local governments. IITF is only managing the State’s lands, “important to public drinking water supply, shellfish harvesting, public recreation, and fish and wildlife propagation and management.” Fla. Admin. Code R. 18-21.001,
*636 In Sarasota Anglers Club, Inc. v. Burns, 193 So.2d 691, 693 (Fla. 1st DCA 1967), the first district explained:
The title to public bottoms is vested in the state as a public trust to be held for the benefit of all the people.... It is quite obvious that the public interest demands that there be some impairment of the individual citizen’s right to enjoy absolute freedom in the use of public bottoms. The decisions recognize this fact.
It necessarily follows that some agency must determine when, under what circumstances, and to what extent the public interest demands or permits the construction of wharfs, docks, piers, buoys, the dredging of channels and the filling of parts of the public bottoms.
Article X, Section 11 of the Florida Constitution provides:
The title to lands under navigable waters, within the boundaries of the state, which have not been alienated, including beaches below mean high water lines, is held by the state, by virtue of its sovereignty, in trust for all the people. Sale of such lands may be authorized by law, but only when in the public interest. Private use of portions of such lands may be authorized by law, but only when not contrary to the public interest.
We conclude that IITF has not exceeded its authority.
The amended rules preclude the use of submerged land to provide services to islands that had not been developed as of December 18, 1990. Lost Tree argues that the use of this date, rather than the date the rules became effective, makes their application impermissibly retroactive as to its application which had been pending prior to the effective date of the rules. Lost Tree cites no authority other than Gulfstream Park Racing Ass’n v. Division of Pari-Mutuel Wagering, 407 So.2d 263 (Fla. 3d DCA 1981). In Gulfstream, however, the Division of Pari-Mutual Wagering promulgated a rule after denial of Gulfstream’s application in order to support its denial of the application.
In the present ease, IITF passed a moratorium on August 22,1989. Under the moratorium no applications for use of sovereign submerged lands would be reviewed until the rules were promulgated. The validity of the moratorium was upheld in Board of Trustees of the Internal Improvement Trust Fund v. Lost Tree Village, 600 So.2d 1240 (Fla. 1st DCA 1992). Lost Tree’s argument on retro-activity here is simply an attempt to reliti-gate the same issue which was already determined adversely to Lost Tree in the decision upholding the moratorium, and is thus without merit.
Lost Tree next argues that the amendments are invalid as being arbitrary or capricious under section 120.52(8)(e), because the amendments force development choices which could be worse for the submerged land than the prohibited activities. They argue, for example, that if sewer lines cannot be laid across state land to the islands, then septic tanks will have to be used, and they can leach into surrounding waters. IITF replies that it does not control development of the land, that this is left up to local government, and IITF relies on local government, to make sure that any development does not degrade the surrounding submerged lands.
In the present case, IITF was presented with a substantial amount of evidence regarding environmental degradation that results from the construction of bridges and utilities across submerged land. Lost Tree has not demonstrated that its decision was arbitrary and capricious. See Yonge v. Askew, 293 So.2d 395 (Fla. 1st DCA 1974) (affirming denial of a permit to excavate canals in land bordering Crystal River so as to create water front lots).
Finally, Lost Tree argues that the economic impact statement prepared by the IITF pursuant to section 120.54(2), Florida Statutes (1991), failed to consider the economic consequences to the owners of islands affected by the proposed rules. IITF asserted that any impact on the island owners was speculative or incapable of estimation. The senior. management analyst who prepared the economic impact statement testified that there were 867 islands affected by these rules, and only six applications for use of sovereign submerged lands pending. He testified that Lost Tree had no right to use *637 these sovereign submerged lands before the new rules, and that the new rules would thus not have affected Lost Tree economically. He also testified that it would have been impossible to determine the economic impact to the owners of the islands.
Lost Tree relies on Department of Health and Rehabilitative Services v. Wright, 439 So.2d 937 (Fla. 1st DCA 1983), and Cataract Surgery Center v. Health Care Cost Containment Board, 581 So.2d 1359 (Fla. 1st DCA 1991); however, those eases are distinguishable in that ongoing businesses were affected by the new rules. In the. present case, there is no ongoing business or development, and under those circumstances the trustees “can hardly be faulted for failing to make estimates on the basis of unknown variables.” Brewster Phosphates v. Department of Environmental Regulation, 444 So.2d 483, 487 (Fla. 1st DCA 1984). See also section 120.68(8), Florida Statutes which provides that deficiencies in an economic impact statement are subject to a harmless error analysis.
We therefore affirm.
WARNER, J., and OFTEDAL, RICHARD L., Associate Judge, concur.